In re Jon S. WILSON, Debtor.

Cook Group Incorporated, Wilson–Cook Medical Inc., Cook Incorporated, Vance Products Incorporated, and Sabin Corporation, Plaintiffs,

v.

Jon S. Wilson, Defendant.

Wilson–Cook Medical Inc., Plaintiff,

v.

Wiltek Medical Inc., Defendant.

Nos. 1:98CV01019, B–93–50034 C–11W, A–94–6010W, 6:90CV00206.

United States District Court,
M.D. North Carolina.

May 23, 2000.

Jim W. Phillips, Jr., Greensboro, NC, William B. Sullivan, Winston–Salem, NC, Aaron J. Kramer, Chicago, IL, for plaintiff.

Charles M. Ivey, III, Greensboro, NC, James R. Fox, Winston–Salem, NC, for defendant.

## MEMORANDUM OPINION

TILLEY, Chief Judge.

This appeal is from the United States Bankruptcy Court for the Middle District of North Carolina. Plaintiffs Cook Group Inc., Wilson–Cook Medical, Inc., Cook Inc., Vance Products Inc., and Sabin Corp. (collectively "Cook") appeal the orders entered on July 2, 1998, May 7, 1998, and December 8, 1997 by the bankruptcy court. Specifically, Cook appeals the bankruptcy court's decision to vacate its earlier holding that Defendants Wiltek Medical, Inc. ("Wiltek") and Jon S. Wilson were in contempt between May 22, 1995, and December 8, 1997, for using Cook's Trade Secrets 5, 6, and 8 in violation of an injunction entered by the bankruptcy court on May 22, 1995. For the reasons stated below, the decision of the bankruptcy court is partially VACATED and the case is REMANDED to the bankruptcy court for findings consistent with this Memorandum Opinion.[1]

---

1. After submitting its initial appeal of the bankruptcy court's decision, Cook moved to amend its statement of issues to include five additional issues [Doc. # 2]. The bankruptcy

## I.

The factual background and procedural history to this dispute are long and convoluted. A detailed discussion is found in the bankruptcy court's Memorandum Opinion of May 22, 1995, the bankruptcy court's Second Memorandum Opinion of December 8, 1997, and the bankruptcy court's Amendment to Second Memorandum Opinion of May 7, 1998. An overview follows.

The bankruptcy court, in its Memorandum Opinion of May 22, 1995, found that Wiltek had misappropriated nine of Cook's trade secrets and awarded compensatory and punitive damages to Cook. The bankruptcy court also enjoined Wiltek from using these nine trade secrets, as long as they remained trade secrets. At a later time, the court entered an order that allowed Cook to conduct one surprise inspection of Wiltek's manufacturing facilities in order to ensure compliance with the injunction.

Cook conducted this inspection on October 1, 1997, and thereafter alleged that Wiltek was using five of the processes that earlier had been declared by the bankruptcy court to be trade secrets. Cook filed a Motion for Entry of Rule or Order to Show Cause in which it requested that the bankruptcy court determine whether Wiltek was in contempt of the court's May 22, 1995, Order and Injunction. Specifically, Cook alleged the continuing misappropriation of five of Cook's trade secrets, including Trade Secrets 5, 6, and 8. The bankruptcy court held several hearings on the matter, and on December 8, 1997, the court entered a Second Memorandum Opinion. In this opinion, the court found that Wiltek had misappropriated Cook's Trade Secrets 5, 6, and 8. Ten days after

court did not address this motion, and this Court has not yet ruled on whether Cook may amend its statement of issues on appeal. For the reasons given in Part VI of this Memorandum Opinion, Cook's motion to amend its statement of issues on appeal is DENIED as moot.

this opinion was entered, Wiltek filed an Emergency Motion for Stay and Reconsideration.

After several hearings and a period of discovery, the opinion was amended and vacated in part by the bankruptcy court in its May 7, 1998, Order and Amendment to the Second Memorandum Opinion. The court found that Trade Secrets 5, 6, and 8 were no longer trade secrets because the processes were "readily available in the public domain," and thus, Wiltek was not in contempt.

## II.

Four issues are on appeal.[2] Cook first maintains that the bankruptcy court erred in granting the Defendants' Motion for Reconsideration. The remaining three issues concern whether the bankruptcy court erred in its finding that Trade Secrets 5, 6, and 8 are no longer trade secrets.

In reviewing the bankruptcy court's decision, legal conclusions are subject to plenary review. *See Butler v. David Shaw, Inc.*, 72 F.3d 437, 441 (4th Cir.1996). This Court is bound by the bankruptcy court's findings of fact that are not clearly erroneous. *See* Fed.R.Civ.P. 52(a) ("Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous ...."); *Multi–Channel TV Cable Co. v. Charlottesville Quality Cable Corp.*, 65 F.3d 1113, 1121–22 (4th Cir.1995) ("On appeal from a bench trial, we may only set aside findings of fact if they are clearly erroneous...."). Under Rule 52 of the Federal Rules of Civil Procedure, the clearly erroneous standard governs even where the findings of fact are based on documentary evidence.

2. A fifth issue on appeal involved Trade Secrets 3 and 14. This issue was appealed separately in case number 1:98CV01019. This Court upheld the portion of the bankruptcy court's December 8, 1997, Second Memorandum Opinion that found that Wiltek was not using Trade Secrets 3 and 14.

*See Nalle v. First Nat'l Bank,* 412 F.2d 881, 884 (4th Cir.1969).

Under the "clearly erroneous" standard, " 'a finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.' " *Miller v. Mercy Hosp., Inc.,* 720 F.2d 356, 361 (4th Cir.1983) (quoting *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948)). This "conviction of mistake may properly be based upon a conclusion that, without regard to what the 'actual' facts may be, the findings under review were induced by an erroneous view of the controlling legal standard, or are not supported by substantial evidence, or were made without properly taking into account substantial evidence to the contrary or are against the clear weight of the evidence considered as a whole." *Id.* (citations omitted).

## III.

■ Cook argues that the bankruptcy court erred in granting the motion for reconsideration based on newly discovered evidence. Cook argues that because this evidence was available to Wiltek and could have been discovered before the initial hearing, the evidence should not have been considered in deciding whether to grant the motion for reconsideration. (Pls.' Mem.Supp. Appeal Defs.' Contempt Concerning Cook's Misappropriated Trade Secrets 5, 6 and 8 at 23–24.) *See Boryan v. United States,* 884 F.2d 767, 771 (4th Cir. 1989) ("Evidence that is available to a party prior to entry of judgment ... is not a basis for granting a motion for reconsideration as a matter of law.").

The bankruptcy court, however, based its decision to reconsider on the need to prevent manifest injustice and not on the basis of newly discovered evidence. (Amendment to Second Mem.Op. at 7 ("The court is convinced that under the circumstances shown by the defendants, the Second Memorandum Opinion and Order of December 8, 1997, would result in manifest injustice if not modified as provided herein.").) The Fourth Circuit was presented with similar facts in *EEOC v. Lockheed Martin Corp.,* 116 F.3d 110 (4th Cir.1997). In that case, it was argued that reconsideration had been improperly based on newly discovered, previously unavailable evidence, when in fact, the evidence was previously available. *See id.* at 112. The Fourth Circuit observed that the lower court "specifically clarified in its order ... that 'new evidence' was not the basis for its order granting the Rule 59(e) motion." *Id.* The court noted that a court could grant a Rule 59(e) motion in its discretion based on the need to prevent manifest injustice. *See id.* Thus, as in *Lockheed Martin,* the bankruptcy court could consider the previously available evidence because the court granted the motion for reconsideration based on the need to prevent manifest injustice.

■ There is some dispute as to whether the motion for reconsideration was granted under Rule 59 or Rule 60, but regardless of the basis for granting the motion, the bankruptcy court's decision is reviewed for abuse of discretion. *Compare Lockheed Martin,* 116 F.3d at 112 ("We review an order granting a Rule 59(e) motion under an abuse of discretion standard." (citation omitted)), *with Aliff v. Joy Mfg. Co.,* 914 F.2d 39, 44 (4th Cir. 1990) ("The disposition of motions under Rule 60(b) is ordinarily a matter within the discretion of the District Court which will not be disturbed on appeal absent a showing of abuse of that discretion." (citation omitted)).

The bankruptcy court noted that the proceedings leading up to the Second Memorandum Opinion were abbreviated. (Amendment to Second Mem.Op. at 6.) Specifically, the court noted that the hearing was held less than one month after the show cause motion was filed, there were no formal pleadings, there was little time for discovery, the hearing was limited to one day, and the process was "handled in a

very expedited and somewhat summary fashion." (*Id.*) The court further noted that it was rejecting the "[p]laintiffs' argument that the defendants did not exercise due diligence in their presentation at the hearing on November 10, 1997 ... [and finding] that under the circumstances presented, the defendants ... are not barred from offering the additional evidence." (*Id.* at 8.) Based on these findings regarding the abbreviated proceeding, this Court finds that the bankruptcy court did not abuse its discretion in considering the evidence discovered after the initial hearing.

## IV.

■ Cook next argues that the bankruptcy court erred in vacating its Second Memorandum Opinion by finding that Cook's Trade Secrets 5, 6, and 8 were in the public domain. (Pls.' Mem.Supp. Appeal Defs.' Contempt Concerning Cook's Misappropriated Trade Secrets 5, 6 and 8 at 33–38.) The bankruptcy court's application of law is reviewed *de novo*.

As one commentator recently noted, very few cases have been decided in which the North Carolina Trade Secrets Protection Act has been implicated. *See* David P. Hathaway, Comment, *Is the North Carolina Trade Secrets Protection Act Itself a Secret, and Is the Act Worth Protecting?*, 77 N.C.L.Rev. 2149, 2151 & n. 23 (1999). Thus, it is not surprising that the North Carolina courts have never faced a situation like the one in this case.[3] Typically, trade secrets cases involve a two-part inquiry: first, whether the process in question is a trade secret and second, if the process is a trade secret, whether that process was misappropriated. *See, e.g., Barr–Mullin, Inc. v. Browning*, 108

N.C.App. 590, 595–97, 424 S.E.2d 226, 229–30 (1993) (applying this two-part inquiry to determine the likelihood of success on the merits as part of deciding whether a preliminary injunction should be issued).

In this case, those issues were determined in 1995, when the bankruptcy court concluded that Trade Secrets 5, 6, and 8 were protected as trade secrets and that Wiltek had misappropriated these trade secrets. (Injunction and Judgment, No. 6:90CVS00206, May 22, 1995; Memorandum Opinion, Findings of Fact and Conclusions of Law, May 22, 1995.) At that time, the court issued an injunction that prohibited Wiltek from using any of Cook's trade secrets "for as long as said trade secrets continue to exist." (Injunction and Judgment, at 1, May 22, 1995.) This remedy was in accord with the North Carolina Trade Secrets Protection Act, which provides that "misappropriation ... shall be permanently enjoined upon judgment finding misappropriation for the period that the trade secret exists plus an additional period as the court may deem necessary." N.C.Gen.Stat. § 66–154(a).[4]

■ The bankruptcy court then reexamined the issue in its May 7, 1998 order. At that point, the court concluded that the processes were readily available in the public domain, and therefore were no longer trade secrets. While this finding would furnish a complete defense to an original claim of trade secret misappropriation, it does not completely answer the question in this contempt proceeding. In this proceeding, there has already been an initial finding that Wiltek illegally appropriated the trade secrets. There is, however, no finding that Wiltek's present use of the

---

**3.** Because the North Carolina Supreme Court has not interpreted the North Carolina Trade Secrets Protection Act in circumstances such as are presented here, this Court must offer its best judgment as to what it thinks the North Carolina Supreme Court would do in this case. *See Hatfield v. Palles*, 537 F.2d 1245, 1248 (4th Cir.1976).

**4.** This remedy, specified by the North Carolina legislature, implicitly affirms a principle of trade secret law that the Fourth Circuit recognized in the 1930s. That is, "the long-recognized principle of equity that no man ought to be allowed to enrich himself unjustly at the expense of another." *Hoeltke v. C.M. Kemp Mfg. Co.*, 80 F.2d 912, 928 (4th Cir. 1935).

processes is not simply a continuation of the misappropriation and, therefore, a violation of the bankruptcy court's original injunction. Once a process has been adjudicated a trade secret, the law protects that secret from those who obtain it illegally. This is the essence of misappropriation, which is defined as the "acquisition, disclosure, or use of a trade secret of another ... unless such trade secret was arrived at by independent development, reverse engineering, or was obtained from another person with a right to disclose the trade secret." N.C.Gen.Stat. § 66–152(1).[5]

Wiltek, which had previously misappropriated the trade secret, would be allowed to use the process only after that process was (1) no longer a trade secret and (2) Wiltek had obtained the process lawfully. In essence, Cook's prima facie case of misappropriation was established by the 1995 injunction and judgment entered against Wiltek. Thus, at the 1997 hearing, Wiltek should have had the burden of rebutting this prima facie case. In order to rebut this evidence, Wiltek would need to introduce substantial evidence that it "acquired the information comprising the trade secret by independent development, reverse engineering, or it was obtained from another person with a right to disclose the trade secret." N.C.Gen.Stat. § 66–155.

Such a decision is consistent with cases from other jurisdictions. In a case for conversion of trade secrets and unfair competition, a federal district court in Florida

stated, "The principle that because a secret is of such a nature that it can be discovered by lawful means does not deprive its owner of a right to protection from those who obtain it unlawfully is not only generally accepted, it is also sagacious." *Biodynamic Techs., Inc. v. Chattanooga Corp.,* 644 F.Supp. 607, 611 (S.D.Fla.1986). In another trade secrets case, the Indiana Supreme Court held that "[e]ven if information potentially could have been duplicated by other proper means, it is no defense to claim that one's product could have been developed independently of plaintiff's, if in fact it was developed by using plaintiff's proprietary designs." *Amoco Prod. Co. v. Laird,* 622 N.E.2d 912, 918 (Ind.1993) (internal quotation omitted).[6]

Although not a trade secrets case, support for this holding can also be found in a case involving claims of patent infringement and unfair competition decided by the Fourth Circuit. *See Servo Corp. of Am. v. General Elec. Co.,* 393 F.2d 551, 555 (4th Cir.1968). In *Servo,* the court rejected a case from Pennsylvania, stating that "if [the case] holds that the mere presence in the public domain of the information upon which a trade secret is based precludes recovery for breach of a confidential relationship, we decline to follow it." *Id.* at 555. The court continued to say that it was irrelevant that the information was in the public domain, unless the defendant

---

**5.** To establish a prima facie case of misappropriation, substantial evidence must be introduced "that the person against whom relief is sought both: (1) [k]nows or should have known of the trade secret; and (2) ... has acquired, disclosed, or used it without the express or implied consent or authority of the owner." N.C.Gen.Stat. § 66–155. Thus, one is only barred from using what is a trade secret if it has been obtained in an unlawful way, that is, if it has not been developed apart from the information that was protected as a trade secret.

**6.** The Indiana Supreme Court was construing the Indiana statute on trade secrets. This statute defines a trade secret as "information

... that ... derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons ..." Ind.Code § 24–2–3–2. In contrast, the North Carolina statute defines a trade secret as "information ... that ... [d]erives independent ... value from not being generally known or readily ascertainable through independent development or reverse engineering by persons ..." N.C.Gen.Stat. § 66–152(3)(a). The Indiana court concluded that the language "not being readily ascertainable" was ambiguous, and the court discussed the general difficulties raised in attempting to define trade secrets. *See Laird,* 622 N.E.2d at 915–16.

could meet the burden of proving that it developed the process that it was using from that information in the public domain and not from the confidential relationship that existed between the plaintiff and defendant. *See id.*

Thus, the burden should have been placed on Wiltek to show that it obtained the processes that it was using in October of 1997 either through independent development or from someone with a right to disclose the processes.[7]

## V.

■■■■■■ On remand the bankruptcy court, of course, may consider all aspects relating to whether Wiltek should be held in contempt. In order for civil contempt to be appropriate, the injunction issued by the court must be clear, unambiguous, and set forth in specific detail the behavior that is to be avoided. *See In re General Motors Corp.*, 61 F.3d 256, 258 (4th Cir.1995); *see also International Longshoremen's Ass'n v. Philadelphia Marine Trade Ass'n*, 389 U.S. 64, 76, 88 S.Ct. 201, 19 L.Ed.2d 236 (1967) ("The judicial contempt power is a potent weapon. When it is founded upon a decree too vague to be understood, it can be a deadly one.").[8]

In its findings, the bankruptcy court stated that "there is merit to defendants' assertion that the plaintiffs' description of their claimed trade secrets have been a 'moving target' as this litigation has proceeded." (Amendment to Second Mem. Op. ¶ 4.) In a footnote, the bankruptcy

court noted that "defendants conclude that the four components of the catheter marking process were mixed and matched in such a way as to leave a degree of ambiguity as to exactly what the secrets were, and thus a degree of ambiguity as to precisely what behavior was forbidden." (Amendment to Second Mem.Op. ¶ 4 n. 2.) In this same footnote, the court discusses the Defendants' arguments in greater detail. (*Id.*) The bankruptcy court made no finding as to whether it accepted those arguments, and therefore it is not clear whether the court found that the injunction was clear enough such that civil contempt would be appropriate.[9]

In the last sentence of paragraph eighteen, the bankruptcy court found that a part of the defendants' catheter marking process did not violate the Injunction and Judgment entered by the court on June 22, 1995. (Amendment to Second Mem. Op. ¶ 18.) It is not clear if this finding is because the court found that the processes were no longer trade secrets, or if this finding is because the trade secret itself was ambiguous. On remand, this issue should be examined.

## VI.

Because of this remand, the third and fourth issues on appeal are moot. Further, the issues of whether the bankruptcy court erred in not determining a date upon which the trade secrets ceased to be trade secrets are now moot. For this reason, whether to allow the amendment of the issues on appeal is not addressed.

---

**7.** If the processes were generally known in the public domain, then someone with this general knowledge could have disclosed it to Wiltek.

**8.** The burden to prove civil contempt is on Cook and must be established by clear and convincing evidence. *See id.* Willfulness is not an element, and contempt may even be established where the act that violated the court's order was done innocently. *See id.; McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191, 69 S.Ct. 497, 93 L.Ed. 599 (1949).

**9.** Such a finding would be helpful in light of the holding in the Second Memorandum

Opinion that "[t]he court concludes that, taken together, the injunctive provisions contained in the Injunction and Judgment and the detailed findings and conclusions contained in the memorandum opinion satisfy the civil contempt requirement that the order relied upon set forth in specific detail an unequivocal demand ... The Injunction and Judgment is clear and specific in stating that the defendants are not to use or to disclose any of such trade secrets for as long as the trade secrets continue to exist." (Second Mem.Op. at 7.)

## VII.

For the reasons stated, the decision of the bankruptcy court to grant the motion for reconsideration is AFFIRMED. The Amendment to Second Memorandum Opinion is VACATED in part and REMANDED for further proceedings consistent with this opinion.