**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 09-2300**

DECISION INSIGHTS, INCORPORATED,

               Plaintiff - Appellant,

     v.

SENTIA GROUP, INCORPORATED; THOMAS H. SCOTT; MARK
ABDOLLAHIAN; JACEK KUGLER; BRIAN EFIRD,

               Defendants - Appellees.

Appeal from the United States District Court for the Eastern
District of Virginia, at Alexandria.  Claude M. Hilton, Senior
District Judge.  (1:06-cv-00766-CMH-JFA)

Argued:  January 28, 2011         Decided:  March 15, 2011

Before TRAXLER, Chief Judge, and MOTZ and KEENAN, Circuit
Judges.

Vacated and remanded by unpublished per curiam opinion

Nicholas Hantzes, HANTZES & REITER, McLean, Virginia, for
Appellant.  Edward F. O'Connor, THE ECLIPSE GROUP, LLP, Irvine,
California, for Appellees.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Decision Insights, Inc. (DII) filed a complaint in June 2006 against Sentia Group, Inc. (Sentia) and the four individuals that founded Sentia (collectively, the defendants).[1] DII alleged in its complaint that Sentia's development of a competing software application was based on materials obtained from the defendants' misappropriation of DII's trade secrets. DII also alleged that several of the individual defendants breached contractual and fiduciary obligations owed to DII by disclosing DII's confidential and proprietary information, including the "source code" for DII's software,[2] reports containing marketing and research material, information contained in the user manual for the DII software at issue, and certain information pertaining to DII's clients.

In June 2007, the district court granted the defendants' motion for summary judgment on all DII's claims. In an unpublished opinion issued in February 2009, this Court affirmed the judgment of the district court in part and reversed in part.

---

[1] The individual defendants named in DII's complaint are Mark Abdollahian, Brian Efird, Jacek Kugler, and Thomas H. Scott.

[2] "Source code" is a document written in computer language, which contains a set of instructions designed to be used in a computer to bring about a certain result. See Trandes Corp. v. Guy F. Atkinson Co., 996 F.2d 655, 662-63 (4th Cir. 1993).

Decision Insights, Inc. v. Sentia Group, Inc., 311 F. App'x 586 (4th Cir. 2009) (per curiam). We remanded the case with instructions to the district court to consider, among other issues, whether DII's software application, as a total compilation, could qualify as a trade secret under Virginia law. Id. at 593-94. On remand, the district court again granted the defendants' motion for summary judgment, holding that DII failed to develop facts during discovery that would establish that DII's software, as a compilation, is not generally known or ascertainable, and that all DII's claims must be dismissed in light of that holding. Upon review of the district court's judgment on remand, we vacate the district court's judgment, and we remand the case for further proceedings consistent with this opinion.

I.

Because our prior opinion set forth the facts of this case at great length, see id. at 587-91, we summarize the relevant facts only briefly here. We review the factual record in the light most favorable to DII, the non-moving party in the district court. Hope v. Pelzer, 536 U.S. 730, 734 n.1 (2002).

The record reflects that DII created software in the 1980s called the "Dynamic Expected Utility Model" (EU Model), which is an analytical tool used to prepare negotiating strategies. The

EU Model assesses risk, compares the impact of different operating positions, and details the relative effects of selecting various alternatives. Essentially, the EU Model applies concepts from several academic disciplines, including mathematics, economics, political science, and psychology, to predict for DII's clients the outcome of a given political or business situation. DII owns the assets, copyright, and all proprietary rights to the EU Model, which DII considers to be its primary asset.

Sentia was formed in November 2002 by the four individual defendants in this case, Mark Abdollahian, Brian Efird, Jacek Kugler, and Thomas H. Scott. Three of these defendants, Abdollahian, Efird, and Kugler, were formerly affiliated with DII, and each worked with the EU Model while employed by DII.[3] Abdollahian and Efird entered into nondisclosure agreements with DII that restricted their ability to disclose information acquired during their employment with DII. Kugler signed a similar nondisclosure agreement, but DII failed to execute the agreement. Additionally, Efird's contract contained a covenant

---

[3] Abdollahian provided executive consulting services to DII. Efird is a former DII employee. Kugler is a former director of DII and "major owner" of stock in DII. Scott was not formerly affiliated with DII.

4

placing restrictions on his potential future employment with any business competitor of DII.

Sentia initially sought to obtain a software license from DII for use of the EU Model. However, negotiations between the parties did not result in an agreement. Sentia later hired Carol Alsharabati, a former consultant for DII who worked extensively on the source code for DII's EU Model, to develop software for a Sentia product that would compete directly with DII's software. Alsharabati completed this task in about six weeks, which, according to DII, could only have been accomplished by using DII's source code to create the Sentia software.

DII filed a complaint in the district court against the defendants, alleging that Abdollahian, Efird, Kugler, and Alsharabati disclosed DII's trade secrets to Sentia in violation of the Virginia Trade Secret Misappropriations Act, Virginia Code §§ 59.1-336 through -343 (the Act).[4] According to DII, the software developed by Alsharabati for Sentia is almost identical to DII's EU Model, both in terms of method and in the results obtained when the respective programs are executed. DII asserted that Sentia's software could not achieve results equal to DII's software unless all the parameters, variables, and

_____

[4] DII did not name Alsharabati as a defendant.

5

sequencing associated with the programs are equal. Although the EU Model uses certain mathematical formulas that are in the public domain, DII asserted that the combination and implementation of these formulas in DII's source code for the software constitutes a trade secret.

DII also alleged that Efird, Kugler, and Abdollahian breached their respective contractual and fiduciary obligations by disclosing confidential and proprietary information owned by DII. Additionally, DII contended that Scott conspired with Sentia to induce DII's former employees to breach their respective nondisclosure agreements with DII, and assisted the defendants in misappropriating DII's trade secrets.[5] The parties agree that Virginia law governs DII's claims.

After discovery, the defendants filed a motion for summary judgment seeking dismissal of all DII's claims. The district court granted the defendants' motion. With regard to DII's trade secret claims, the district court held that DII failed to meet its burden to establish that the EU Model software qualified as a trade secret under the Act. The district court

---

[5] DII asserted the following causes of action in its amended complaint: breach of contract (Count I), conspiracy to commit breach of contract (Count II), conspiracy to injure another in trade, business or profession (Count III), misappropriation of trade secrets (Count IV), breach of fiduciary duty (Count V), and conversion (Count VI).

6

did not address DII's claims relating to the other materials that DII asserted were its trade secrets, including reports containing marketing and research material, information contained in the user manual for the DII software at issue, and certain information pertaining to DII's clients.

With regard to DII's breach of contract claims, the district court held that DII failed to identify "any confidential or proprietary information obtained by [the defendants] while employed at DII that [was] thereafter misappropriated" that would violate the nondisclosure provisions in Abdollahian's and Efird's agreements. The district court also held that DII could not establish an enforceable contract between DII and Kugler because DII did not execute Kugler's agreement.

DII timely noted an appeal and, as stated above, we affirmed in part, reversed in part, and remanded the case to the district court. 311 F. App'x at 587. In our unpublished opinion, we noted that DII's trade secret claims were founded, in part, "upon its software as a total compilation." Id. at 593. We held that the district court "did not address whether or not the software program, as a total compilation, could qualify as a trade secret." Id. Accordingly, we remanded the case with instructions that the district court analyze DII's software compilation claim in light of our decision in Trandes

Corp. v. Guy F. Atkinson Co., 996 F.2d 655 (4th Cir. 1993) (applying Maryland law). See 311 F. App'x at 593-94. As stated in our prior opinion in this case, we held in Trandes that a "plaintiff's alleged software compilation trade secret is to be analyzed separate and apart from other software trade secret claims, and that production of source code is an acceptable method of identifying an alleged compilation trade secret." 311 F. App'x at 594 (citing Trandes, 966 F.2d at 661-63.).

We instructed the district court to determine first whether DII "adequately identified its software compilation claim." Id. at 594. If DII made such a showing, we stated, the district court "should then consider the sufficiency of DII's showing as to the existence of a trade secret and [thus] a triable issue of fact." Id. We provided further that "the district court should specifically address the relevant criteria for establishing the existence of a trade secret under Va. Code. § 59.1-336, namely, whether or not the compilation has independent economic value, is generally known or readily ascertainable by proper means, and is subject to reasonable efforts to [maintain] secrecy." Id.

Additionally, we remanded DII's claims concerning other confidential information that DII alleged was misappropriated by the defendants, including the operating manual for the DII software, DII's reports containing marketing and research material, and DII's client contact information. Id. at 595. We

8

observed that the district court failed to discuss these categories of alleged proprietary materials, and that "[d]epending on the circumstances, any of this information could be characterized as trade secrets" under the Act. Id. We also remanded DII's breach of contract claims to the district court, with instructions that the court "address DII's contractual claims in light of [the court's] findings with respect to the existence of a trade secret."[6] Id. at 596.

On remand, the district court first held that DII met its burden under Trandes to demonstrate that DII's source code was unique. However, the district court concluded that DII failed to satisfy its burden to show that DII's software, as a compilation, was not generally known or readily ascertainable by proper means. In reaching this conclusion, the district court found that DII "failed to distinguish which aspects of its software, as a compilation, are publicly available or readily ascertainable and which are not." The district court did not address the other relevant criteria under the Act, including whether the compilation had independent economic value, and

---

[6] We affirmed the district court's grant of summary judgment on the issue whether DII met its evidentiary burden to show that any of the twelve individual portions of the program within DII's source code could constitute a trade secret. Id. at 595. That issue is not before us in this appeal.

9

whether the compilation was subject to reasonable efforts by DII to maintain the secrecy of the information.

The district court held that DII's other claims, including its claims concerning DII's marketing, research, and client information material, as well as DII's breach of contract claims, all failed because DII did not satisfy its evidentiary burden for the software compilation trade secret claims. Accordingly, the district court awarded summary judgment to the defendants on all DII's claims. DII timely appealed from the district court's judgment.

II.

A.

The primary issue in the present appeal is whether DII adduced enough evidence during discovery to allow a jury to reach the ultimate conclusion that the DII software, as a compilation, is not generally known or ascertainable by proper means, within the meaning of Section 59.1-336 of the Code of Virginia. As discussed below, we conclude that the district court erred in holding that DII failed to satisfy its burden of producing sufficient evidence on this issue.

We review the district court's decision granting summary judgment de novo. See S.C. Green Party v. S.C. State Election Comm'n, 612 F.3d 752, 755 (4th Cir. 2010). Under Rule 56(a) of

10

the Federal Rules of Civil Procedure, summary judgment should be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986) (construing former Rule 56(c) of the Federal Rules of Civil Procedure). A genuine dispute exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 258. In conducting our analysis, we view the evidence in the light most favorable to the non-moving party. See Hope, 536 U.S. at 734 n.1.

"[T]he determination whether a trade secret exists ordinarily presents a question of fact to be determined by the fact finder from the greater weight of the evidence." MicroStrategy, Inc. v. Li, 601 S.E.2d 580, 589 (Va. 2004). The Act defines a "trade secret" as "information, including but not limited to a formula, pattern, compilation, program, device, method, technique, or process, that:

> 1. Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and

> 2. Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy."

11

Va. Code § 59.1-336. As described in our prior opinion in this case, the determination whether information qualifies as a trade secret under the Act depends on "whether or not the [information] has independent economic value, is generally known or readily ascertainable by proper means, and is subject to reasonable efforts to [maintain] secrecy." 311 F. App'x at 594 (citing Va. Code. § 59.1-336).

We have recognized that a trade secret may be composed of publicly-available information if the method by which that information is compiled is not generally known. For instance, in Servo Corp. of America v. General Electric Co., 393 F.2d 551, 554 (4th Cir. 1968), we held that a trade secret "might consist of several discrete elements, any one of which could have been discovered by study of material available to the public." Additionally, we have held specifically that computer source code as a compilation can qualify as a trade secret. See Trandes, 996 F.2d at 664. Moreover, the definition of a "trade secret" provided in the Act explicitly includes a "compilation" among the types of information that qualify for protection under the statute. Va. Code. § 59.1-336.

Although it is clear that a software compilation such as DII's EU Model can qualify for protection as a trade secret, the question presented here is whether the record supports DII's contention that the DII software is not generally known or

12

readily ascertainable by proper means. As described below, DII relies on deposition testimony and reports from two witnesses that DII presented in support of the argument that the EU Model software, as a compilation, is not generally known or readily ascertainable.

The defendants, however, urge that we reject the testimony offered by these two witnesses as "ultimate conclusions" of individuals affiliated with DII. The defendants maintain, without citing any authority, that the testimony of these two witnesses "is clearly not evidence and cannot be used to satisfy [DII's] burden." We disagree with the defendants' argument.

DII presented the report of expert witness Dr. Bruce Bueno de Mesquita, the Silver Professor of Politics at New York University and an authority on expected utility theory, the theory upon which the EU Model is based. Dr. Bueno de Mesquita was a founder of DII, and he co-authored the original source code for DII's EU Model in the 1980s.

In his report, Dr. Bueno de Mesquita characterized some of the elements of the DII software as "proprietary . . .[,] elements that have not been published in my research or anyone else's." Dr. Bueno de Mesquita's report expressly rebutted the testimony of the defendants' expert witness, Dr. Peter Alexander, who asserted that Sentia's "alleged uses of proprietary DII methodologies are well known concepts from the

open literature." Additionally, Dr. Bueno de Mesquita stated in his report that "[t]he method for calculating the value of the discount term that triggers the stopping rule and – crucially – leads to the predicted outcome is proprietary; that is, unpublished. . . . [N]o formula for the actual calculation is stated in . . . [any] publication that addresses the forecasting model on which DII's software is based."

DII also presented the report and deposition testimony of Gary Slack, a current DII employee and co-author of DII's software program. Mr. Slack stated in his report and during his deposition testimony that many aspects of the source code, and hence the compilation of the source code as a whole, were not public knowledge or readily ascertainable by proper means. In his report, Mr. Slack identified and described 13 proprietary processes in the source code, and stated that "[t]he collection of these processes as a whole and the sequence of these processes also serve as a proprietary aspect of [DII's EU Model software]." Mr. Slack's expert report also included a "flow chart," which set forth the sequencing of DII's source code, including its organization and structure. Mr. Slack testified that portions of this process, as well as the entire sequencing of the process, were not known to the public.

During his deposition testimony, Mr. Slack also identified numerous variables that are part of DII's software code for the

14

EU Model, noting that the set of these variables had "never been disclosed to anyone else." Mr. Slack further testified that while a few of these individual variables were in the public domain, numerous other of these variables were not in the public literature or known outside of DII. Additionally, Mr. Slack testified that "[n]one of the code has ever been shared with anybody that has not signed a confidential[ity] agreement."

In light of the foregoing evidence offered by Dr. Bueno de Mesquita and Mr. Slack concerning the nonpublic and proprietary nature of DII's software code, we conclude that the district court erred in holding that DII failed to satisfy its evidentiary burden to show that DII's software compilation was not generally known or readily ascertainable by proper means. Therefore, we conclude that DII adduced sufficient evidence during discovery to render this issue appropriate for decision at a trial.

In view of its analysis, the district court did not address the other criteria specified by the Act, including whether DII's software code has independent economic value and whether DII engaged in reasonable efforts to maintain the secrecy of the software code. See Va. Code. § 59.1-336. On remand, the district court should consider these criteria, as well as the adequacy of DII's evidence that the defendants misappropriated

15

DII's software code, in determining if DII's claims under the Act should proceed to a trial.

B.

In addition to the EU Model software, DII also claimed as trade secrets other materials that DII alleged were misappropriated by the defendants, including the operating manual for the DII software, DII's reports containing marketing and research material, and DII's client information. In our prior opinion, we directed the district court to examine these other categories of purported trade secrets under the criteria set forth under the Act. 311 F. App'x at 595.

On remand, the district court dismissed these claims summarily, holding that "[t]he failure of [DII's] software compilation claim requires that these proprietary claims fail." We disagree that the resolution of these other categories of purported trade secrets rises or falls on the issue whether the DII's software compilation qualifies as a trade secret. Regardless, the basis of the district court's holding on this issue is no longer valid in light of our conclusion above, and a remand to the district court for further consideration of these separate issues is required. In considering DII's trade secret claims on remand for these other categories of materials, the district court should apply the criteria specified under the Act's definition of a trade secret, including whether the

16

materials at issue have independent economic value, whether the materials are generally known or readily ascertainable by proper means, and whether DII engaged in reasonable efforts to maintain the secrecy of the information.

C.

The district court also dismissed DII's breach of contract claims, including the claim for breach of nondisclosure agreements asserted against Abdollahian and Efird, the claim for breach of a noncompetition agreement asserted against Efird, and the claim for breach of a nondisclosure agreement asserted against Kugler for the contract that he signed but which DII failed to execute. The sole basis for the district court's dismissal of these claims was the court's earlier holding that DII failed to meet its evidentiary burden with respect to its trade secret claims pertaining to the software compilation. Because we disagree with the district court's holding on that issue, we also vacate the district court's judgment relating to DII's contract-based claims and remand those claims to the district court for further consideration. Consistent with the directive of our prior opinion, we also instruct the district court to consider whether an implied agreement existed between DII and Kugler pertaining to DII's confidential and proprietary information, despite the lack of a fully executed written agreement between the parties. See id. at 596-97.

17

We note that separate consideration of DII's various breach of contract claims will be necessary regardless of the outcome on remand of DII's trade secret claims concerning its software compilation. Those breach of contract claims do not require a finding that the materials at issue qualify as a trade secret, because the respective nondisclosure clauses apply to "any confidential or proprietary information . . . owned or used by" DII.[7] This contractual language is broader than the definition of a "trade secret" under the Act and, thus, the nondisclosure language may apply to the software code and other proprietary materials at issue even if those materials are not covered by the Act. Therefore, we direct the district court to consider

---

[7] The contract clauses at issue provide in full:

The [Party] acknowledges that he will, as a result of his association with [DII], have access to and be in a position to receive information of a confidential or proprietary nature including trade secrets. The [Party] agrees that he will not, during the association with [DII] or thereafter, disclose to anyone whomsoever or use in any manner whatsoever any confidential or proprietary information, whether patentable or unpatentable, concerning any inventions, discoveries, improvements, processes, methods, trade secrets, research or secret data (including but not limited to models, formulas, computer programs and software developments), or other confidential matters possessed, owned, or used by [DII] that may be obtained or learned by the Representative in the course of, or as a result of his association with [DII], except as such disclosure or use may be required in the normal course of doing business with [DII] and pursuant to [DII's] prior written consent.

18

the language of the respective nondisclosure clauses when the court analyzes DII's breach of contract claims.

## III.

For these reasons, we conclude that the district court erred by granting the defendants' motion for summary judgment on all DII's claims.  We remand the case to the district court for further proceedings consistent with this opinion.

VACATED AND REMANDED