**MICROSTRATEGY, INC., Plaintiff,**

v.

**BUSINESS OBJECTS, S.A., et al., Defendants.**

**Civil Action No. 2:01cv826.**

United States District Court, E.D. Virginia, Norfolk Division.

Feb. 10, 2009.

Order Granting Stay Feb. 24, 2009.

**550**

Benita Webster Ellen, Brent Lee Van-Norman, Gregory N. Stillman, Hunton & Williams, Norfolk, VA, Brian D. Wallach, Joseph Phillip Lavelle, Paul Yang, Peter Edward Moll, Howrey Simon Arnold & White LLP, Washington, DC, Ingo Frank Burghardt, Thomas J. Cawley, Hunton & Williams, McLean, VA, James Frederick Valentine, Howrey LLP, Menlo Park, CA, Kenneth Reed Mayo, Reed Mayo Law Firm PC, Virginia Beach, VA, Lewis Franklin Powell, III, Hunton & Williams LLP, Richmond, VA, for Plaintiff.

Alan Dale Albert, Ray Webb King, LeClair Ryan PC, Norfolk, VA, Dana Johannes Finberg, David James Sensenig, LeClair Ryan PC, Richmond, VA, Daniel J. Furniss, Gary H. Ritchey, Theodore G. Brown, III, Townsend Townsend & Crew LLP, Palo Alto, CA, Ian Lawrence Saffer, Townsend Townsend & Crew LLP, Denver, CO, for Defendants.

### *ORDER AND OPINION*

JEROME B. FRIEDMAN, District Judge.

Pending before the court is the second motion of the defendants, Business Objects, S.A. and Business Objects Americas, Inc., (collectively "Business Objects")[1], to dissolve the injunction entered by the court on August 6, 2004 that presently enjoins Business Objects from using, disclosing or possessing two documents, the "Volume Discount Schedule" and the "Business Objects Competitive Recipe" (hereinafter "Competitive Recipe"), belonging to the plaintiff, Micro Strategy, Inc. ("MicroStrategy"). MicroStrategy concedes that the Volume Discount Schedule is no longer a trade secret, and its use and possession no longer needs to be enjoined.

---

**1.** As the court has done in other orders in this matter, for the purposes of this order and opinion, the court hereafter refers to the defendants as "Business Objects" and does so in the singular form. In other words, the court will refer to Business Objects as the defendant.

MicroStrategy, however, opposes the dissolution of the injunction with respect to the Competitive Recipe, because it is still a valuable document, and a trade secret that should remain confidential. On February 3, 2009, the court held a hearing on Business Objects' motion, and for the reasons stated herein, the court **GRANTS** Business Objects' second motion to dissolve the injunction.

### Factual and Procedural Background

The factual background of this case is fully detailed by the court in prior opinions and orders, and need not be reiterated herein. *See e.g., MicroStrategy, Inc. v. Business Objects, S.A.,* 331 F.Supp.2d 396, 400 (E.D.Va.2004). The case involved Business Objects' misappropriation of certain documents belonging to MicroStrategy that were trade secrets, in violation of the Virginia Uniform Trade Secrets Act. *See* Va.Code. Ann. 59.1–336 et seq.

In October of 2003, the court held a bench trial on this matter, and on August 6, 2004, the court issued its Findings of Facts and Conclusions of Law. *MicroStrategy, Inc. v. Business Objects, S.A.,* 331 F.Supp.2d 396, 400 (E.D.Va.2004) (hereinafter "August 6, 2004 order"). In the August 6, 2004 order, the court did not make a finding as to whether these two documents still constituted trade secrets, and noted that given their age, it is possible that these documents are no longer trade secrets. *See id.* at 431. The court, however, recognized that Virginia Code Section 59.1–337 permits a court to issue an injunction for a reasonable period of time to eliminate any competitive advantage that may have resulted from the misappropriation. *See id.* Consequently, in the August 6, 2004 order, the court issued a permanent injunction, but advised Business Objects that it could, at the end of a six-month period, petition the court to dissolve the injunction on the basis that the documents in question no longer constitute trade secrets.

On February 17, 2005, Business Objects filed its first motion to dissolve the injunction along with a supporting memorandum of points and authorities. After a hearing held on April 21, 2005, the court issued an Opinion and Order denying Business Objects' motion to dissolve the injunction. *See MicroStrategy, Inc. v. Business Objects, S.A.,* 369 F.Supp.2d 725 (E.D.Va. 2005) (hereinafter "May 10, 2005 order"). The court determined that Business Objects failed to meet their burden under Virginia Code Section 59.1–337 of establishing that the documents at issue were no longer trade secrets. *See id.* at 734. The court also determined that Business Objects failed to meet their burden under federal law for dissolving the injunction because they failed to show that a sufficient period of time had passed to eliminate any commercial advantage Business Objects might have obtained from the use and possession of the documents, or that there had been a significant, unforeseen change in the law that would make compliance with the injunction more difficult. *See id.* at 734–737. The court concluded that the injunction should remain in effect for a minimum of nine months from the date of the order, after which Business Objects could again petition the court to dissolve the injunction.

On October 22, 2008, Business Objects filed its second motion to dissolve the injunction, and the matter was fully briefed and referred to the court on November 24, 2008. On January 22, 2009, Business Objects filed a motion for leave to file a supplemental reply memorandum in support of their motion. MicroStrategy filed a response in opposition to this motion on February 2, 2009, and provided additional information for the court to consider

should it grant Business Objects' motion for leave to file a supplemental reply.

### Analysis

Business Objects contends that the injunctive relief provided by the August 6, 2004 order should be terminated because the Competitive Recipe and the Volume Discount Schedule can no longer be viewed as trade secrets. Business Objects claims that the information in both of these documents is now stale, such that neither document has any value, economic or otherwise. MicroStrategy concedes that the Volume Discount Schedule is no longer a trade secret, but argues that the Competitive Recipe still has value and is still a trade secret that should remain protected by the injunction. As both parties agree that the Volume Discount Schedule is not a trade secret and that the injunction can be dissolved with respect to that document, the only the issue before the court is whether the Competitive Recipe is still a trade secret, and should continue to remain under the protection of the injunction.

### 1. Competitive Recipe

The court notes that the Competitive Recipe, a 44–page document created by MicroStrategy that "described the means by which MicroStrategy could compete with and beat Business Objects," is approximately nine years old. *Id.* at 412, 422. The document was already ten months old when Business Objects acquired it in October 2001, and it was considered a "playbook" of how Business Objects' 2000–2001 products compared to MicroStrategy 7.0, and how MicroStrategy could exploit the weaknesses in Business Objects' 2000–2001 products. In the October 2003 trial, MicroStrategy's CEO Michael Saylor testified that the Competitive Recipe "had three primary values to Business Objects: (1) It would let them

know what flaws their product had; (2) Business Objects could change its marketing message to downplay such flaws; or (3) the company could alter its sales cycle to counteract these weaknesses." *Id.* at 412. In other words, the Competitive Recipe "detailed how MicroStrategy would counter the various aspects of Business Objects' product or exploit various weaknesses or deal with 'traps' regarding its own product." *Id.* at 422.

MicroStrategy has since updated and added to the Competitive Recipe to reflect new products, new technology, and market changes. The only version of the Competitive Recipe, however, at issue is the one received by Business Objects in the October 2001 email, and detailed in the August 6, 2004 order. *See* August 6, 2004 order, at 411–413, 431 (enjoining Business Objects from possessing, using, or disclosing the Competitive Recipe that was part of plaintiff's exhibit 5). Any other versions of the Competitive Recipe were not subject to the court's prior orders, and were not enjoined, and thus, cannot be the subject of this motion or order.

### 2. Legal Analysis

■ Rule 60(b) of the Federal Rules of Civil Procedure provides that "[o]n motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: . . . (5) the judgment has been satisfied, released, or discharged . . . or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from operation of the judgment." Fed.R.Civ.P. 60(b)(5) & (6). The court must find "a significant change either in factual conditions or in law." *Rufo v. Inmates of Suffolk County Jail,* 502 U.S. 367, 384, 112 S.Ct. 748, 116 L.Ed.2d 867 (1992).

■ Business Objects seeks termination of the injunction pursuant to a federal rule, and bears the burden of establishing that the Competitive Recipe is no longer a trade secret, and that the injunction is no longer necessary. The case, *Crutchfield v. United States Army Corps of Eng'rs,* 175 F.Supp.2d 835 (E.D.Va.2001), outlines the six factors the court should consider in determining whether to dissolve the injunction:

> (1) the circumstances leading to entry of the injunction and the nature of the conduct sought to be prevented;
>
> (2) the length of time since entry of the injunction;
>
> (3) whether the party subject to its terms has complied or attempted to comply in good faith with the injunction;
>
> (4) the likelihood that the conduct or conditions sought to be prevented will recur absent the injunction;
>
> (5) whether the moving party can demonstrate a significant, unforeseen change in the facts or law and whether such changed circumstances have made compliance substantially more onerous or have made the decree unworkable; and
>
> (6) whether the objective of the decree has been achieved and whether continued enforcement would be detrimental to the public interest.

*Id.* at 844. In applying this framework, the court also looks to the substantive state law that authorized this injunction. Section 59.1–337 of the Virginia Code provides that the court shall terminate an injunction when the trade secret has ceased to exist; however, even if the court determines that the document is no longer a trade secret, the court may continue the injunction for an additional reasonable period of time so that any commercial advantage that otherwise would be derived from the misappropriation is eliminated. *See* Va.Code § 59.1–337(A).

*3. Virginia Code Section 59.1–337*

■ As the court noted in the May 10, 2005 order, to carry its burden in establishing that the Competitive Recipe is no longer a trade secret, Business Objects must provide sufficient evidence from which the court can find that the documents (1) no longer have economic value; and (2) are no longer the subject of efforts that are reasonable under the circumstances to maintain their secrecy. *See* 369 F.Supp.2d at 734 (citing *Pierre Dionne v. Southeast Foam Converting & Packaging, Inc.,* 240 Va. 297, 302, 397 S.E.2d 110 (1990)).

■ In support of their argument that the Competitive Recipe no longer has any value, economic or otherwise, Business Objects presented the Declaration of Piet Loubser, the Vice President for Marketing Intelligence for SAP, A.G.[2] Mr. Loubser states that in 2002, Business Objects stopped selling any of its 2000–2001 products, and that Business Objects has not provided technical support for those products since October 2003. Mr. Loubser also states that a document instructing a company on how to sell MicroStrategy's 7.0 products against Business Objects' 2000–2001 would be useless because MicroStrategy no longer sells MicroStrategy 7.0, and Business Objects no longer sells or supports any products offered in the 2000–2001 time frame. Business Objects also argues that the Competitive Recipe is no longer subjected to reasonable efforts to maintain its secrecy because the information is outdated because the technology

---

**2.** In January 2008, SAP A.G. purchased Business Objects. Business Objects continues to operate as a separate entity, and is publicly referred to as "Business Objects, an SAP Company,"

behind these products has rapidly evolved, rendering prior strategies for dealing with the prior technologies useless. In support of this argument, Business Objects offers (1) the April 2005 deposition testimony of MicroStrategy's Vice President of Products, Mark LaRow, who testified about the short "shelf-life" of competitive intelligence information in the fast-changing technology market, and (2) MicroStrategy's advertisements and statements regarding the technology behind its latest product, MicroStrategy 9. MicroStrategy argues that the Competitive Recipe is still valuable, and remains confidential, because even though new versions of MicroStrategy products have been released, the core structure of the technology remains the same. In support of their argument, MicroStrategy has provided declarations from Mark LaRow, Salil Uslugil, Vice President of North American Sales, and Jeff Bedel, MicroStrategy's Chief Technology Officer, all of whom state that the Competitive Recipe is still a valuable tool that has been updated and changed to address the new products and technology.

As noted above, the Competitive Recipe is approximately nine years old, and outlines a competitive strategy to deal with Business Objects' products that have not been on the market for at least seven years. The court had noted in both the August 6, 2004 order and the May 10, 2005 order that while the Competitive Recipe was a trade secret when acquired, the document would likely lose its trade secret status over time. *See* August 6, 2004 order, 331 F.Supp.2d at 431 ("The court is well-aware that the documents described may no longer constitute trade secrets."); May 10, 2005 order, 369 F.Supp.2d at 736 ("The court does not anticipate that this injunction will exist permanently into perpetuity ... As the court suggested in the August 6, 2004 order, at some point the documents at issue cease to be economical-

ly valuable or become publicly available and, thus, cease to be trade secrets."). In both orders, the court invited Business Objects to petition the court to remove the injunction when it could prove the Competitive Recipe no longer held any value. The court finds that Business Objects has met this burden and has established that this document no longer has any value, economic or otherwise, because the products it references are obsolete, and have been obsolete for several years now. The court does not wholeheartedly reject the declarations offered by Micro Strategy, but after reexamining the Competitive Recipe, the court finds that this document was tailored to deal with problems associated with products that have not existed for at least seven years. An updated Competitive Recipe that addresses the current products and technologies being offered by MicroStrategy and Business Objects would likely be a trade secret today, but the Competitive Recipe created in 2000/2001 is antiquated and its strategies for dealing with Business Objects' products, and addressing the technology available at that time would not be useful given today's technology. Both parties acknowledge that the market for these products rapidly evolves given the fast pace that the technology advances, and this is best evidenced by the numerous versions of these products that have been offered by MicroStrategy and Business Objects in the past four years. Specifically, MicroStrategy just released MicroStrategy 9, which they market and advertise as, among other things: "the company's most significant release in nearly a decade;" that it "includes new, advanced features to improve performance, scale, and efficiency in large-scale enterprise BI applications;" that it "introduces a major new architectural component called 'In-memory ROLAP' to dramatically improve query performance;"

and that it "introduces SQL generation algorithm optimizations." These statements by MicroStrategy evidence not only the rapid pace at which the technology changes, but also the specific, drastic changes in the technology and products offered by MicroStrategy. After reexamining the Competitive Recipe and the evidence presented, the court finds that the Competitive Recipe does not hold any value, economic or otherwise, and that is it not reasonable, under the circumstances, for this document to maintain its secrecy. It is not just the mere passage of time that has rendered the Competitive Recipe valueless, it also no longer holds value because the products it references have not been on the market for over half a decade, and the market for these products is constantly changing. In other words, not only are the Business Objects and MicroStrategy products referenced in the Competitive Recipe obsolete, they have been replaced with newer, different, and improved products, not contemplated by the Competitive Recipe. The court, therefore, finds that the Competitive Recipe previously enjoined in the August 4, 2006 order should no longer be considered a trade secret. The court, however, notes that this finding is limited to the Competitive Recipe at issue in the August 4, 2006 order, and does not apply to any other versions of the Business Objects' Competitive Recipe that may exist, as those documents were never before the court.

### 4. The Crutchfield factors

█ The court also finds that, after examining the six factors set out in *Crutchfield*, it is also appropriate under federal law to dissolve this injunction. The court's prior reservations to dissolving the injunction in 2005 largely derived from the concern that the short period of time the injunction had been in place was insufficient to eliminate any competitive advantage Business Objects may have had in possessing the Competitive Recipe for three years. That concern has largely been alleviated by the four-and-a-half year passage of time, which has, along with the changes in technology, eliminated value of the Competitive Recipe.

#### a. Circumstances of Injunction and Nature of Conduct

Business Objects' conduct in obtaining the Competitive Recipe is clearly detailed in the court's August 6, 2004 order, and need not be repeated herein. *See* August 6, 2004 order, 331 F.Supp.2d at 411–413, 422–423. In the May 10, 2005 order, the court stated that "the harm the court sought to prevent in its prior order [issuing the injunction] was the improper advantage Business Objects gained and would continue to gain commercially through its improper possession and use of MicroStrategy's confidential trade secrets." May 10, 2005 order, 369 F.Supp.2d at 734–35. The court noted that Business Objects possessed these documents for nearly three years prior to the imposition of the injunction, and that the purpose of the injunction was (1) to prevent Business Objects from possessing, using, and disclosing the described misappropriated trade secrets; and (2) to eliminate any commercial advantage that Business Objects may have obtained through its possession and use of the documents. *See id.* at 736; *see also* August 6, 2004 order, 331 F.Supp.2d at 431 (stating that even though the Competitive Recipe may no longer constitute a trade secret at the time of the injunction, the injunction was necessary for a reasonable period of time to eliminate any advantage Business Objects' possession of the Competitive Recipe provided).

#### b. Length of Time Since Entry of the Injunction

As the court noted in the May 10, 2005 order, "the mere passage of time, however,

is not a sufficient reason to terminate an injunction ... and the crucial characteristic of a trade secret is secrecy rather than novelty." May 10, 2005 order, 369 F.Supp.2d at 734 (internal citations and quotations omitted). At the time of that order, the court found that nine months was not a sufficient amount of time to undercut any commercial advantage that Business Objects may have gained through their three-year possession and use of the documents. *See id.* However, the injunction has now been in place for approximately four-and-a-half years, since August 6, 2004. Business Objects waited approximately three-and-a-half years, well past the nine months provided for in the May 10, 2005 order, before petitioning the court a second time to dissolve the injunction.

### c. Business Objects' Compliance with the Injunction

While compliance with the injunction is what the law expects, there is no dispute that Business Objects has complied with the terms of the injunction since its inception approximately four-and-a-half years ago.

### d. Likelihood of Repeat of Conduct that Prompted Injunction

There is no indication that Business Objects will repeat the enjoined conduct. MicroStrategy makes much of Business Objects' argument that the injunction should be removed so Business Objects is not punished if it lawfully obtains the Competitive Recipe in the future. However, MicroStrategy has presented no evidence that Business Objects would attempt to obtain this information unlawfully. Additionally, the court has already determined that the Competitive Recipe no longer has any value, so Business Objects would not obtain any competitive advantage from any future possession of this document.

### e. Significant Change in Facts or Law That Have Made Compliance Difficult

Business Objects concedes that there has not been any significant, unforeseen change of fact or law has occurred that would make compliance with the injunction more difficult. *See Crutchfield,* 175 F.Supp.2d at 847. The only change in circumstances have resulted from the passage of time and new technological developments that have rendered the Competitive Recipe valueless, and this change would not make compliance with the injunction more difficult.

### f. Objectives of the Injunction and the Public Interest

The objective of the injunction was to eliminate any commercial advantage that Business Objects may have acquired through their misappropriation of the Competitive Recipe. While "there is certainly a significant public interest in maintaining the confidentiality of trade secrets and preventing misappropriation," May 10, 2005 order, 369 F.Supp.2d at 736, the court has already determined that the Competitive Recipe is no longer a trade secret. Additionally, over four years have passed since the inception of the injunction, and the products and strategies discussed in the Competitive Recipe are over seven years old. A sufficient period of time has lapsed, and coupled with the changes in technology, the court finds that the possession of this document can no longer give Business Objects a competitive advantage over MicroStrategy, and the purpose of the injunction has been met.

### Conclusion

As the court stated in both the August 6, 2004 order and the May 10, 2005 order, it never anticipated that the injunction would continue into perpetuity, and the court in-

vited Business Objects to petition the court when it could prove that the Competitive Recipe could no longer be considered a trade secret. A reading of section 59.1–337 makes clear that the objectives of an injunction covering trade secrets will be met when both the trade secrets cease to exist and any residual commercial advantage is eliminated. *See* Va.Code Ann. § 59.1–337. The court finds that Business Objects has now met that burden, and has established that the Competitive Recipe should no longer be considered a trade secret under Virginia law. The Competitive Recipes has ceased to be economically valuable because the products and technology it references are outdated, and have not been available to the public for the last seven years. The court therefore finds that the injunction should be dissolved with respect to both the Volume Discount Schedule and the Competitive Recipe at issue in the August 6, 2004 order, and **GRANTS** Business Objects' second motion to dissolve the injunction. The court **ORDERS** the permanent injunction put into place on August 6, 2004 to be dissolved with respect to the Volume Discount Schedule and the Business Objects' Competitive Recipe at issue in the August 6, 2004 order. This opinion and order does not affect any other versions of the Business Objects' Competitive Recipe that have since been created, or adapted, as those documents were never before the court.

The court also **GRANTS** Business Objects' motion to supplement the reply memorandum, and the Clerk is **DIRECTED** to file and docket Business Objects' supplemental reply memorandum and exhibits attached to the motion, received on January 22, 2009, and MicroStrategy's response that relates to the supplemental memorandum, received on February 2, 2009.

Additionally, the Clerk is **REQUESTED** to send a copy of this Order to counsel of record.

It is so **ORDERED.**

## *OPINION AND ORDER ON MOTION FOR STAY*

This matter comes before the court on MicroStrategy, Inc.'s ("MicroStrategy") emergency motion to stay dissolution of the injunction against Business Objects, S.A. and Business Objects Americas, Inc., (collectively "Business Objects").[1] Business Objects opposes a stay of the dissolution of the injunction, and on February 12, 2009, the court held a hearing via telephone on the issue. At the hearing, the court **GRANTED** MicroStrategy's motion, and ordered that the dissolution of the injunction be stayed, effective immediately, pending MicroStrategy's appeal of the court's February 10, 2009 opinion and order (hereinafter "February 10, 2009 order"). The court further explains its decision to stay the dissolution of the injunction pending MicroStrategy's appeal below.

### *Factual Background*

As the factual and procedural background of this case has been fully explained in prior opinions, the court will only detail the facts and procedural history relevant to this motion.

On August 6, 2004, the court found that Business Objects misappropriated certain documents constituting trade secrets belonging to Micro Strategy, and enjoined

---

**1.** As the court has done in other orders in this matter, for the purposes of this order and opinion, the court hereafter refers to the defendants as "Business Objects" and does so in the singular form. In other words, the court will refer to Business Objects as the defendant.

Business Objects from possessing, using, or disclosing those documents. *MicroStrategy, Inc. v. Business Objects, S.A.*, 331 F.Supp.2d 396 (E.D.Va.2004) (hereinafter "August 6, 2004 order"). One of the documents enjoined, and the document as issue in this motion, was entitled "Business Objects Competitive Recipe," (hereinafter "2000/2001 Competitive Recipe"), and was a detailed document outlining business strategies for competing with Business Objects in the early part of this decade. *See id.* at 422, 431. When the court enjoined Business Objects from possessing, using or disclosing the 2000/2001 Competitive Recipe, the court also stated that it did not intend for the injunction to last forever, and advised Business Objects that it could petition the court in as early as six months to dissolve the injunction upon a showing that the 2000/2001 Competitive Recipe no longer constituted a trade secret. *See id.* at 431.

On February 17, 2005, Business Objects filed its first petition to dissolve the injunction. On May 10, 2005, the court denied Business Objects' motion because Business Objects failed to establish that the 2000/2001 Competitive Recipe was no longer a trade secret. *See MicroStrategy, Inc. v. Business Objects, S.A.*, 369 F.Supp.2d 725 (E.D.Va.2005) (hereinafter "May 10, 2005 order"). The court, however, reiterated that it did not expect the injunction to last into perpetuity, and again invited Business Objects to petition the court to dissolve the injunction after at least nine months had passed. *See id.* at 737.

Three-and-a-half years later, on October 22, 2008, Business Objects filed its second petition to dissolve the injunction. On February 10, 2009, the court granted the motion and ordered that the injunction be dissolved because Business Objects had sufficiently proven that the 2000/2001 Competitive Recipe no longer had any val-

ue, and thus, was not a trade secret. MicroStrategy now asks the court to stay the dissolution of the injunction pending its appeal of the February 10, 2009 order.

### *Analysis*

Rule 62 of the Federal Rules of Civil Procedure provides that "[w]hile an appeal is pending from an interlocutory order or final judgment that grants, dissolves, or denies an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights." Fed.R.Civ.P. 62(c). In determining whether to grant a stay, the court should consider the following four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of a stay will substantially injure other parties interested in the proceeding; and (4) where the public interest lies." *Hilton v. Braunskill*, 481 U.S. 770, 776, 107 S.Ct. 2113, 95 L.Ed.2d 724 (1987); *see also Standard Havens Products, Inc. v. Gencor Industries, Inc.*, 897 F.2d 511, 512 (Fed.Cir.1990). The court need not give these factors equal weight, but should consider all of the factors in light of the circumstances surrounding the injunction. *See Standard Havens Products, Inc.*, 897 F.2d at 512–13. Many courts view the first two factors as a sliding scale, with the greater the harm to the movant requiring a lesser showing of the likelihood of success on appeal. *See id.* at 513 ("When harm to applicant is great enough, a court will not require 'a strong showing' that applicant is 'likely to succeed on the merits.'") (citing *Hilton*, 481 U.S. at 776, 107 S.Ct. 2113); *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 387–88 (7th Cir.1984) ("The more likely the plaintiff is to win the less heavily need the balance of harms weigh in his

favor; the less likely his is to win, the more need it weigh in his favor."); *Hamilton Watch Co. v. Benrus Watch Co.*, 206 F.2d 738, 740 (2d Cir.1953) ("[I]t is not necessary that plaintiff's right to a final decision, after trial, be absolutely certain, wholly without doubt; if the other elements are present—i.e., the balance of hardship tips decidedly toward plaintiff—it will ordinarily be enough that the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation."). The purpose behind a court granting a stay pending appeal is generally preventative or protective because the stay

seeks to maintain the status quo pending a final determination of the merits of the suit. An order maintaining the status quo is appropriate when a serious legal question is presented, when little if any harm will befall other interested persons or the public and when denial of the order would inflict irreparable injury on the movant. There is substantial equity, and need for judicial protection, whether or not movant has show a mathematical probability of success.

*Washington Metro., Area Transit Comm'n v. Holiday Tours*, 559 F.2d 841, 844 (D.C.Cir.1977). With these principals in mind, the court will now examine the particular circumstances of this case.

■ First, the court looks to see if MicroStrategy has made a strong showing of its likelihood of success on the merits. As noted by the district court in *Washington Speakers Bureau, Inc. v. Leading Authorities, Inc.*, No. 98cv534, 1999 U.S. Dist. LEXIS 5148 (E.D.Va.1998),

a movant need not convince a district court that it is more likely that not that the appeal will succeed. Were this the standard, a stay would be warranted only in the unlikely event a movant could persuade the district judge that

his or her decision was probably incorrect. The rule does not impose so onerous a burden on stay movants. Instead, to show a likelihood of success in the appeal, a movant must demonstrate that its appeal raises a "substantial legal question."

*Id.* at *4–5 (citing *Odetics, Inc. v. Storage Tech. Corp.*, 14 F.Supp.2d 785, 797 (E.D.Va.1998)). MicroStrategy's appeal will challenge the court's February 10, 2009 order that dissolved the injunction established in the August 2004 order, which enjoined Business Objects from possessing, using, or disclosing the 2000/2001 Competitive Recipe. MicroStrategy argues that there is a "substantial legal question" as to whether Business Objects established that the 2000/2001 Competitive Recipe was no longer a trade secret because the evidence presented by MicroStrategy established that the 2000/2001 Competitive Recipe is still valuable. A district court's decision to grant, modify, or dissolve an injunction is reviewed by the appellate court for an abuse of discretion, which is only found if "the court made a clear error of law or clearly erroneous factual findings." *Acumed LLC v. Stryker Corporation*, 551 F.3d 1323 (Fed.Cir.2008); *see also iLOR, LLC v. Google, Inc.*, 550 F.3d 1067, 1070 (Fed.Cir.2008). In the February 10, 2009 order dissolving the injunction, the court considered the 2000/2001 Competitive Recipe, the declarations presented by MicroStrategy and Business Objects, MicroStrategy's statements about its latest product, MicroStrategy 9, and the court's prior opinions regarding the 2000/2001 Competitive Recipe. In arguing that MicroStrategy is likely to succeed on appeal, MicroStrategy fails to identify a flaw in the court's legal reasoning; rather, MicroStrategy simply argues that the evidence it presented was more compelling than the evidence presented by

Business Objects. MicroStrategy has been aware since August 2004 that 2000/2001 Competitive Recipe's trade secret status was questionable, and that the court would likely dissolve the injunction when the document no longer proved valuable. *See* August 6, 2004 order, 331 F.Supp.2d at 431 ("The court is well-aware that the documents described may no longer constitute trade secrets.... However, the statute also permits the court to extend the injunction for a reasonable period despite this fact. Consequently, the court will enjoin Business Objects *for a reasonable minimum period,* at which time it may petition the court to dissolve the injunction, should it desire to do so.") (emphasis added); *see also,* May 10, 2005 order, 369 F.Supp.2d at 736 ("The court does not anticipate that this injunction will exist permanently into perpetuity.... As the court suggested in the August 6, 2004 order, at some point the documents at issue cease to be economically valuable or become publicly available and, thus, cease to be trade secrets."). It would, therefore, seem to the court that upon realizing that Business Objects possessed the 2000/2001 Competitive Recipe for three years, and that the court was likely to dissolve the injunction in the future, MicroStrategy would have altered the business and marketing strategies in the 2000/2001 Competitive Recipe to counteract any knowledge Business Objects may have obtained, and to diminish any value the 2000/2001 Competitive Recipe may have had. MicroStrategy, however, has repeatedly argued that it still uses "substantial portions" of the 2000/2001 Competitive Recipe. By making this assertion, MicroStrategy can continually argue that the document is still valuable and that the injunction should remain as long as the 2000/2001 Competitive Recipe is being used by MicroStrategy, which, as it stated at the February 3, 2009 hearing, "could be quite a very long time."

Yet, in the February 10, 2009 order, the court reexamined the 2000/2001 Competitive Recipe, and found that the specific products referenced have not been on the market for over five years, and that the marketing and business strategies for those products were approximately nine years old. Additionally, the court determined, based upon the evidence presented, that generally, the technology in this field rapidly evolves, and that significant changes in the products mentioned in the 2000/2001 Competitive Recipe had been made in the past nine years. Finally, the court specifically noted the injunction and the decision to dissolve the injunction only applied to the 2000/2001 Competitive Recipe obtained by Business Objects in October 2001, and any other version of the Business Objects Competitive Recipe had not been affected by the injunction, and would not be effected by the decision to dissolve the injunction. Therefore, it appears to the court that MicroStrategy has not raised "a substantial legal question" indicating their likelihood of success on appeal because the court considered all of the evidence, including the 2000/2001 Competitive Recipe, in deciding to dissolve the injunction. In doing so, the court ultimately did not find MicroStrategy's statements that the 2000/2001 Competitive Recipe was still valuable to be persuasive, but rather an effort to continue to prolong an injunction that was no longer necessary. Thus, the court finds that MicroStrategy has not made a strong showing of its likelihood of success on appeal and that this factor weighs against staying the dissolution of the injunction pending appeal.

Moving onto the second factor, the court must now determine whether MicroStrategy will be irreparably harmed if the court does not stay the dissolution of the injunction. While the court does not believe that the decision to dissolve the injunction was

in error, or that MicroStrategy has presented a strong likelihood of success on appeal, the court must acknowledge that if the appellate court were to reverse the February 10, 2009 order, that MicroStrategy would be irreparably harmed if the dissolution of the injunction were not stayed. The injunction was put into place to prevent Business Objects from obtaining any competitive advantage from its misappropriation of the 2000/2001 Competitive Recipe. Business Objects impermissibly obtained the document and possessed it for three years before the court issued the injunction. Even though the court questioned whether the 2000/2001 Competitive Recipe was still a trade secret when it issued the injunction, the court noted that the injunction was necessary to eliminate any commercial advantage Business Objects obtained from its possession of that document. Therefore, even though the court has determined that the 2000/2001 Competitive Recipe is no longer valuable, should the court's decision be in error and the court not stay the dissolution of the injunction, Business Objects could obtain a commercial advantage should it come into possession of the document while an appeal is pending. Thus, any victory MicroStrategy would gain on appeal would then be a hollow victory because the original purpose of the injunction would have been defeated, and once the information in the 2000/2001 Competitive Recipe is disseminated, it cannot be retrieved and made private again. Business Objects argues that MicroStrategy has an alternative form of relief should the appellate court reverse the February 10, 2009 decision. MicroStrategy would be able to seek monetary damages by filing a claim, and proving that Business Objects impermissibly obtained a copy of the 2000/2001 Competitive Recipe. The court, however, finds that this proposed "solution" would in actuality further burden MicroStrategy be-

cause if this court is wrong, and does not stay the dissolution of the injunction pending appeal, MicroStrategy would not only lose any competitive value of the Competitive Recipe 2000/2001 may have had, it would also have to take additional steps to attempt to be compensated for a loss that presumably should not have occurred. The court is not persuaded that MicroStrategy has a reasonable alternative to staying the dissolution of the injunction pending appeal, and that without a stay, MicroStrategy could be irreparably harmed. Therefore, this factor supports staying the dissolution of the injunction pending appeal.

When examining the third factor, the court finds that the harm to other interested parties, namely Business Objects, would be minimal. Business Objects has identified three main burdens that the injunction imposes upon it that would be furthered if the dissolution were stayed pending MicroStrategy's appeal. First, Business Objects is concerned about the possibility of unintentionally violating the terms of the injunction because a future employee of Business Objects may have lawfully obtained the 2000/2001 Competitive Recipe through his or her prior employment at MicroStrategy. Business Objects, however, has not indicated that there is a substantial likelihood that this concern will become a reality in the near future, only that this is a possibility. Second, Business Objects is concerned about the effect the injunction, especially an injunction that has outlived its purpose, has with its reputation, and how that effects its business and interactions with consumers. Finally, Business Objects argues that it would be further burdened by allowing an unnecessary injunction to remain in place on appeal because that would ultimately mean Business Objects would remain enjoined for an additional year or two while MicroS-

trategy exhausted all of its appeals. Although this concern is diminished somewhat by MicroStrategy's assertion that it would not oppose expediting the appeal. Business Objects has been under this injunction since August 6, 2004, and therefore, has not had this document in its possession since that time. Additionally, the court has determined that the Competitive Recipe no longer has any value, economic or otherwise, and therefore, Business Objects has no real need or desire to possess this document. Staying the dissolution of the injunction, and continuing to prohibit Business Objects from possessing the document would not cause any irreparable harm to Business Objects, especially when compared to the irreparable harm MicroStrategy could suffer if the dissolution was not stayed. Because maintaining the status quo and allowing the injunction to continue pending appeal would not add an additional, substantial burden to Business Objects, the court finds that this factor weighs in favor of the court staying the dissolution of the injunction pending appeal.

Finally, the court must consider where the public interest lies. As the court noted in the May 10, 2005 opinion, "there is certainly a significant public interested in maintaining the confidentiality of trade secrets and preventing their misappropriation." *MicroStrategy, Inc. v. Business Objects, S.A.,* 369 F.Supp.2d 725, 736 (E.D.Va.2005). Business Objects argues that the public interest would not be served by continuing an injunction that no longer serves its purpose; however, by maintaining the status quo and continuing to enjoin Business Objects from possessing or using the 2000/2001 Competitive Recipe while the appeal is pending, the court ensures that the document remains confidential until a final determination as to the value of the document is made. Thus, the public interest factor favors staying the dissolution of the injunction pending appeal to preserve the confidentiality of the 2000/2001 Competitive Recipe.

### *Conclusion*

For the reasons stated above, the court finds that an analysis of the four factors strongly support staying the dissolution of the injunction while MicroStrategy appeals the court's February 10, 2009 order. While the court does not believe that its February 10, 2009 decision was in error, or that MicroStrategy has made a strong showing of its likelihood of success on appeal, the court does believe that MicroStrategy could suffer irreparable harm if the court does not stay the dissolution of the injunction. Additionally, the court finds that the harms Business Objects would suffer if the dissolution were to be stayed are minimal, and are the same harms Business Objects has been suffering since the injunction was imposed. Business Objects has not identified any new or additional burdens it would suffer if the dissolution of the injunction were stayed while the appeal is pending. Finally, the public interest weighs in favor of preserving the confidentiality of the document until a final determination can be made as to its trade secret status. Therefore, the court **GRANTS** MicroStrategy's motion to stay the dissolution of the injunction pending appeal, and **ORDERS** that the court's February 10, 2009 decision be stayed, effective February 12, 2009, until MicroStrategy has exhausted its appeals of the court's February 10, 2009 order.

The Clerk is **REQUESTED** to send a copy of this opinion and order to all counsel of record.

**IT IS SO ORDERED.**