# CIRCUIT COURT OF FAIRFAX COUNTY

Tryco, Inc.

    v.

U.S. Medical Source, L.L.C., et al.

August 3, 2010

Case No. CL-2009-8914

BY JUDGE RANDY I. BELLOWS

This Court heard the liability phase of trial, beginning on March 22, 2010, for a span of three days and heard the fourth day on April 7, 2010. At the conclusion of Plaintiff's case, this Court took certain aspects of Defendants' Motion to Strike under advisement. Specifically, whether Plaintiff adequately made a *prima facie* showing that Defendants misappropriated trade secrets, that Defendants were involved in a civil conspiracy, and that Brian Thomas breached his fiduciary duty to Tryco. The parties were also ordered to submit their closing arguments in written form. The final briefs were submitted on May 25, 2010. After reviewing all of the evidence and the parties' submissions, the Court is now prepared to rule.

## I. Background

Tryco, Inc ("Tryco") was established in 1988 by Nicole Zenz. It is a small business that is authorized to sell medical and dental equipment to

the U.S. government through its Decentralized Blanket Purchase Agreement ("DBPA").

Brian Thomas began to work for Tryco in 2005 as a customer sales representative. His two main accounts were Lackland Air Force Base ("Lackland") and Air Force Medical Logistics Office ("AMFLO"). As the on-site employee with the most computer knowledge, he also did some computer maintenance work for Tryco. (Trial Tr. March 22, 2010, at 39.) His mother, Jaqui Thomas, had been a former employee of Tryco for fourteen years and had recently retired prior to Brian Thomas joining Tryco. While at Tryco, she served as the director of marketing and business development. (Trial Tr. March 24, 2010, at 28.)

In 2007, Jayne Thomas, Brian Thomas's sister-in-law, formed U.S. Medical Source, L.L.C. ("USMS"). In 2008, Jayne Thomas, on behalf of USMS, applied for and received a DBPA. Both Tryco and USMS are small woman-owned businesses. Nicole Zenz testified that the government has a mandate that they are supposed to purchase five percent of their procurements from woman-owned businesses and that there are many set asides for small businesses. (Trial Tr. March 22, 2010, at 112.) Thus, Tryco and USMS are direct competitors. Her husband, Chris Thomas, assisted with the DBPA application process, although he was not a member or employee of USMS. (Trial Tr. March 23, 2010, at 56, 61.) Jaqui Thomas, likewise not a member or employee of USMS, provided advice and counsel based on her prior experience on how to successfully overcome some of the difficulties that frequently presented themselves in this line of business. This included how to set up vendor accounts as a new business. (Trial Tr. March 24, 2010, at 33-34.)

After receiving USMS's DBPA in 2008, Jayne Thomas approached Brian Thomas about working for USMS. He accepted the position on April 9, 2008 and provided his notice to Tryco. (Trial Tr. March 23, 2010, at 73.) Brian Thomas never disclosed to anyone at Tryco that he was going to work for a direct competitor. (Trial Tr. March 22, 2010, at 148.) His last day at Tryco was April 24, 2008. (Trial Tr. March 23, 2010, at 76.)

Before leaving, Brian Thomas was asked to tie up some loose ends and to prepare instructions for the person who was going to be taking over his accounts. (Trial Tr. March 24, 2010, at 89, 90.) He cleaned out his desk and cleared his desktop computer of his personal files by transferring them to a flash drive. (Trial Tr. March 24, 2010, at 106-09.) He also created at Nicole Zenz's instruction a document called "How to Quote Lackland" to pass on to his successor. (Trial Tr. March 23, 2010, at 149-50.) The document included the names of buyers he worked with, their phone

numbers, and information on how to mark-up sales. At the request of Tryco, on his last day of work, Brian Thomas sent a farewell e-mail to many of the individuals he had done business with at Lackland Airforce Base and other bases. (Trial Tr. March 2, 2010, at 176.) This e-mail announced his departure from Tryco and thanked everyone for all they had done for him. It did not disclose Brian Thomas's new job with USMS or provide any new contact information for him. He sent this e-mail from Tryco's company e-mail address, which every Tryco employee has access to. (Trial Tr. April 7, 2010, at 86.) He also sent a blind carbon copy ("bcc") to his own personal e-mail address. (Trial Tr. March 23, 2010, at 155.)

Brian Thomas began work for USMS on April 28, 2008. (Trial Tr. March 23, 2010, at 77.) On May 2, 2008, Brian Thomas received a cease and desist letter from Tryco's attorneys, which claimed that he had helped USMS get started while he was still a Tryco employee and that he had taken Tryco's confidential information to use at USMS. (Trial Tr. March 24, 2010, at 112.) After receiving this letter, Brian Thomas went through all of the items he had taken with him when he left Tryco. (Trial Tr. March 24, 2010, at 114.) When he examined the flash drive, he found two documents that he asserted had been mistakenly copied, the "Lackland Contacts" list and the "Bank and Trades" document. (Trial Tr. March 24, 2010, at 115.) He promptly returned the entire flash drive to Tryco. (Trial Tr. March 24, 2010, at 118.) He testified that he never copied the drive or showed it to anyone at USMS and stated that the flash drive had remained in his home, unused, since he had brought it home from Tryco. (Trial Tr. March 24, 2010, at 119-121.)

The "Lackland Contacts" list was a one page document that Brian Thomas had created, which contained eighteen names of Lackland buyers and their contact information. The Contacts List was made in 2006 and had not been updated in two years. (Trial Tr. March 24, 2010, at 140.) The "Bank and Trades" document was a vendor list that Tryco had created in order to open accounts with new vendors. The list contained names of vendors with whom Tryco had already established accounts, along with Tryco's bank account information for these accounts, such as the account name, where the account was kept, and authorization information that would permit a new vendor to obtain information about Tryco's banking reputation. The list was meant to be sent to potential new vendors as a reference list. (Trial Tr. March 22, 2010, at 97-100.)

## II. The Lawsuit and Motion to Strike

Tryco filed suit against Brian Thomas, Chris Thomas, Jayne Thomas, and USMS. The Complaint contains five counts: (I) Breach of Fiduciary Duty against Brian Thomas (II) Misappropriation of Trade Secrets against Brian Thomas and USMS; (III) Tortious Interference against Brian Thomas, Chris Thomas, Jayne Thomas, and USMS; (IV) Civil Conspiracy against Brian Thomas, Chris Thomas, Jayne Thomas, and USMS; and (V) Computer Trespass against Brian Thomas.

At trial, the Court took Defendants' Motion to Strike Counts I, II, and IV under advisement. The Motion to Strike is now denied in all respects.

## III. The Court's Decision on the Merits

After considering all of the evidence presented over the four day trial of this case and the closing briefs filed by the parties, the Court finds in favor of the defendants on all Counts. This is not to say, however, that Plaintiff's claims were objectively unreasonable when filed.

### A. Breach of Fiduciary Duty

In Virginia, an employee owes a fiduciary duty to his employer. The duty to an employer is violated when the employee uses confidential information to the detriment of his employer and to the advantage of a competitive firm. *Avtec Systems, Inc. v. Peiffer*, 805 F. Supp. 1312, 1321 (E.D. Va. 1992) (citing *Sperry Rand Corp. v. Electronic Concepts, Inc.*, 325 F. Supp. 1209, 1219 (E.D. Va. 1970)). This duty continues after the employment relationship has ended until the confidential information known to the employee is no longer valuable to the former employer; that is, it no longer provides a competitive edge to the employer. *Today Homes v. Williams*, 272 Va. 462, 474, 634 S.E.2d 737, 744-45 (2006).

Tryco argues that Brian Thomas breached his fiduciary duty to Tryco when he copied and shared confidential Tryco information with USMS. The confidential information at issue is limited to the "Lackland Contacts" list, the "Bank and Trades" document, and the farewell e-mail Brian Thomas wrote on his last day at Tryco. See Plaintiff's answer to Interrogatory # 3 limiting confidential information to those three documents.

Brian Thomas testified, and the Court finds it persuasive, that he did not take the "Lackland Contacts" list and the "Bank and Trades" document purposefully and that they were not accessed or shared between the time they were copied onto the flash drive and returned to Tryco. Likewise, there is no evidence that he shared either of the documents with any of the defendants. Although USMS does business with Lackland and some of the vendors on the "Bank and Trades" document, Brian Thomas worked with the individuals on the Lackland list daily and also was familiar with the vendors on the Bank and Trades document. He knew this information and had no need for a hard copy of it.

In addition, the farewell e-mail Brian Thomas wrote was sent from the company's e-mail address, which every employee had access to. Therefore, all of the contact information for each individual on the e-mail was preserved in the company's computers. While it is true that Brian Thomas sent a "bcc" copy to his personal e-mail address, the Court does not find this remarkable. He may have done so for any number of *bona fide* reasons, and, while Plaintiff argues he did so in order to preserve these e-mail addresses for future use at USMS, there is simply no evidence to establish this. Brian Thomas knew these e-mail addresses from memory. (Trial Tr. March 24, 2010, at 144-45.) As is true with many institutions, the e-mail addresses for Lackland all followed the same pattern: firstname.lastname@lackland.af.mil

Tryco also argues that Brian Thomas withheld pertinent information from Tryco when he left. Specifically Tryco argues that he refused to disclose his new job information and that the document "How to Sell to Lackland," which Brian Thomas created before leaving, was purposefully misleading because it did not contain all of the contact information for each buyer in each office at Lackland and because the mark-up information was too high. Tryco contends that this type of withholding behavior is evidence of predatory intent and that the Court should not find that Mr. Thomas's conduct was in furtherance of legitimate competition. *See Flippo v. CSC Associates*, 262 Va. 48, 59, 547 S.E.2d 216, 223 (2001).

Tryco did not have a non-compete provision in Brian Thomas's employment contract. Therefore, Mr. Thomas was free to work for a competitor, and there was no legal obligation for him to disclose this fact to Tryco. With regards to the "How to Sell to Lackland" document, Mr. Thomas testified that he wrote the document for someone familiar with quoting sales and that such a person would know that mark-up numbers are never set in stone but, rather, are set on a case-by-case basis. He also testified that the buyer contact information included on the document was

for the buyers with whom he had the most contact, not those for whom he rarely did quotes. It may well be true that the document in question was not as comprehensive or as detailed or as specific as it should have been. But all that establishes is that Brian Thomas did not do as thorough a job on the document as he perhaps could have or perhaps should have. That does not make it proof of — or even evidence of — a breach of fiduciary duty. Employees, whether departing or not departing, occasionally turn in work product their employers find wanting. To characterize this as a "breach of fiduciary duty" — even in the context of the other evidence offered by the plaintiff — is to give this term a meaning it just does not have. Moreover, no one at Tryco ever asked Brian Thomas for any more information than what he created, despite having the opportunity to do so before he left. If Tryco's goal was to have Brian Thomas list every contact he then had at Lackland on this document and give a detailed analysis of the mark-up process, these matters could have been addressed and remedied before he left. No such discussion ever took place. (Trial Tr. March 23, 2010, at 52.)

Therefore, this Court does not find that Brian Thomas breached his fiduciary duty to Tryco before or after he left his position of employ.

### B. *Misappropriation of Trade Secrets*

The Court granted Defendants' Motion to Strike on basis that the farewell e-mail sent by Brian is not a trade secret under Va. Code Ann. § 59.1-336.

### 1. *Definition of a Trade Secret*

Tryco argues that Brian Thomas and USMS misappropriated Tryco's trade secrets when Brian Thomas took the "Lackland Contacts" list and "Bank and Trades" document with him to USMS. It contends that these two documents meet all of the elements of a trade secret under the VUTSA, which defines a "trade secret" as:

> Information including but not limited to a formula, pattern compilation, program, device, method, technique, or process, that: (1) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and (2)

Is the subject of efforts that are reasonable under the circumstances to maintain secrecy.

Va. Code Ann. § 59.1-336.

In order to determine whether these two documents meet the above criteria, the Court will go through each requirement separately.

### a. *Independent Economic Value*

Tryco contends that these two documents, which are data compilations, have independent economic value because they enable a competitor to know the identity and contact information of its customers and suppliers. Tryco argues that this is particularly significant because the "Lackland Contacts" list is the product of years of work and collection by Tryco, and it provides a competitor with immediate access to the contact information for buyers, which is otherwise difficult to obtain. Tryco also asserts that the "Bank and Trades" document has independent economic value because it is a compilation of specific confidential and competitively valuable Tryco account information regarding the suppliers and banks with which Tryco does business. Tryco argues further that the "Bank and Trades" information is particularly valuable because suppliers in the medical equipment industry are often extremely reluctant to do business with small or unknown companies, and thus a start-up company like USMS would find this information to be crucial to the success of their business.

While Tryco's arguments do have some validity, the Court cannot overlook certain qualities of these two documents which diminish their economic value substantially. First, it is admitted by the plaintiff that the "Lackland Contacts" list is outdated. (Tr. Trans. March 22, 2010, at 217.) This is extremely significant because an outdated document provides no independent economic value if the information in it no longer has any value. *See MicroStrategy, Inc. v. Business Objects, S.A.*, 661 F. Supp. 2d 548, 554 (E.D. Va. 2009). Brian Thomas testified that he created this document during the first six months he worked for Tryco and that he had not updated it since 2006. (Trial Tr. March 24, 2010, at 139.) He also testified that only one of the individuals on the list was currently a key buyer for Lackland and that maybe only one or two more were still employed as buyers at all. (Tr. Trans. March 24, 2010, at 143.) Therefore, the document as a whole has little independent economic value to a competitor because, at most, only three of the eighteen names are still

relevant. Second, the "Bank and Trades" document, while independently valuable as a source for vendor names and contact information, is not valuable for the account information it provides. Courts have repeatedly held that collections of numbers and/or letters, whose only value is to access other potentially valuable information, do not by themselves have independent economic value. *State Analysis, Inc. v. American Financial Services Association*, 621 F. Supp. 2d 309, 321 (E.D. Va. 2009); *see also MicroStrategy, Inc. v. Business Objects, S.A.*, 331 F. Supp. 2d 396, 429 n.4 (E.D. Va. 2004). Although the court does not find these two documents to be completely devoid of any economic value, it does note that their economic value is significantly bellow that asserted by the plaintiff.

   b. *Not Generally Known to the Public and Not Readily Ascertainable*

   i. *The "Lackland Contacts" List*

   Tryco argues that the evidence shows that the names, e-mail addresses, telephone numbers, and extensions of the individuals on the "Lackland Contacts" list are not readily ascertainable. Tryco points to the fact that there is no evidence in the record which contains more than one buyer name and contact number, but for the documents compiled by the parties (Trial Tr. April 7, 2010, at 130.) Although the DBPA does provide a general telephone number for each of the sixty DOD bases, Tryco argues that these numbers do not provide direct access to their buyers and would not be helpful because of the difficulty of contacting an individual who works at such a large military base. Due to the difficulty in discovering this information, Tryco argues that the contact list is not readily ascertainable by proper means and not generally known to the public.

   What constitutes information that is readily ascertainable through proper means is heavily fact specific. While it may be true that the identities of certain internal contact people may take some effort to obtain, Tryco did not prove that this information was not available with some searching through a proper means. Notably, Brian Thomas and Chris Thomas testified that they have both personally used the numbers on the DBPA to do business with relevant buyers in the military and that they have successfully found contact information for Lackland personnel by contacting the Lackland base phone directory or operator. (Trial Tr. April 7, 2010, at 105-06; Trial Tr. Mach 24, 2010, at 149, 151.) Where a contact list contains information that is entirely available in the public domain and

ascertainable by proper means, the contact list is not a trade secret. *MicroStrategy Inc. v. Business Objects, S.A.*, 331 F. Supp. 2d 396, 416-17 (E.D. Va. 2004) ("If a competitor could easily discover the information legitimately, the inference is that the information was either essentially 'public' or is of *de minimis* economic value."). Since the Court finds that the information in the "Lackland Contact" list can be ascertained through proper means, the information is essentially public.

Tryco further argues that the compilation of this information is what makes it a trade secret because it is not generally available as a whole. Even when assembled together as a whole, however, the information does not meet the criteria set out in Va. Code Ann. § 59.1-336. *See Servo Corp. of Am. v. Consolidated Elec. Co.*, 393 F.2d 551, 554 (4th Cir. 1968); *MicroStrategy, Inc. v. Business Objects, S.A.*, 331 F. Supp. 2d 396 (E.D. Va. 2004). The accessibility of the information in this case does not change simply because it has been compiled into one document. Therefore, the Court does not find this argument persuasive and concludes that the "Lackland Contacts" list is readily ascertainable through proper means and thus is not a trade secret.

## ii. The "Bank and Trades" Document

Tryco argues that the "Bank and Trades" document is likewise a trade secret because it contains a list of Tryco's major vendors and the individual and confidential account information that Tryco has with those vendors. The list of vendors on the "Bank and Trades" document includes major vendors in the industry whose contact information is publicly available on the internet. (Trial Tr. March 22, 2010, at 97-100.) Further, the evidence reveals that many of the quotes sent by Lackland and AFLO customers include the name of a vendor that sells the requested product and that, if it does not, it is possible to run an internet search for the product and find the vendor of it. (Trial Tr. April 7, 2010, at 10). As the Court has already determined that the account numbers on this document are of no economic value, the issue of whether they are readily ascertainable is moot. The Court finds the vendor names and their contact information to be readily ascertainable through proper means. Therefore, the Court concludes that the "Bank and Trades" document is not a trade secret.

### c. *The Subject of Reasonable Efforts to Maintain Secrecy*

Because the Court has found that the information contained in both of the documents at issue is readily ascertainable, the Court need not reach this last criterion of the definition of a trade secret.

### 2. *Misappropriation*

Although it has determined that the two documents are not trade secrets under Virginia law, the Court also finds that they were not misappropriated. As a necessary element of a trade secrets claim, the plaintiff must show that defendant misappropriated those trade secrets through improper means. Va. Code § 59.1-336. Under the law, improper means include misrepresentation, breach of a duty, and inducement of a breach of a duty. *Id.* The Court found Brian Thomas's testimony that he inadvertently copied the two documents while clearing out his personal files persuasive. Although Tryco did offer a computer expert who testified that the two documents were located in different files than most of Mr. Thomas's personal documents, the Court finds Brian Thomas's testimony to be credible and concludes therefore that the duplication of the documents was inadvertent, not intentional.

Moreover, the evidence shows that all of the information contained in the "Lackland Contacts" list and the "Bank and Trades" document was already known to Mr. Thomas, that he took no other Tryco documents when he left, that he did not use these two documents during the few days he had them, and that he did not disclose them to anyone. (Trial Tr. March 24, 2010, at 119). These are not the actions of an individual who intentionally took information for the purpose of using it against his former employer. If the defendant's acquisition of a trade secret is inadvertent, the requirement of "improper means" is not satisfied. *See MicroStrategy, Inc. v. Business Objects, S.A.*, 331 F. Supp. 2d 396, 417 (E.D. Va. 2004).

### C. *Computer Trespass Act*

Under the Computer Trespass Act, it is "unlawful for any person, with malicious intent, to … erase any computer data, computer programs or computer software … or … make or cause to be made an unauthorized copy … or computer data, computer programs, or computer software residing in … a computer or computer network[.]" Va. Code Ann. § 18.2-

152.4. In a civil suit, a violation of the Computer Trespass Act does not require a finding of malice. It is enough under the statute that the defendant is shown to have purposefully committed the acts that deprived his employer of computer files or records. Va. Code Ann. § 18.2-152.12.

Tryco argues that Brian Thomas violated the Computer Trespass Act on April 9, 2008, when he purposefully copied the "Lackland Contacts" list and the "Bank and Trades" document on to his flash drive and deleted them from his Tryco computer.

Va. Code Ann. § 18.2-152.12 requires Tryco to prove resulting injury from the copying and the deleting of the two files in order to be actionable. Tryco has failed to do this. The "Bank and Trades" document was in fact never deleted from Brian Thomas's computer. Tryco's own computer expert testified that a copy still remained on his desktop after he left. (Trial Tr. March 22, 2010, at 144). In addition, while it is true that the "Bank and Trades" document was copied to the flash drive, plaintiff failed to show any injury that resulted. Rather, the only evidence presented was that Brian Thomas did not access the document during the time it was in his possession and that, as soon as he discovered it was in his possession, he returned it. While it is true that the "Lackland Contacts" list was deleted from Brian Thomas's desktop computer, Tryco has again failed to show any injury. The list was outdated, and only three names on it were still relevant. (Trial Tr. March 24, 2010, at 143). Significantly, there is no evidence that shows Tryco did not otherwise have access to the contact information for these individuals in their database. Finally, although the "Lackland Contacts" list was copied onto Brian Thomas's flash drive, like the "Bank and Trades" document, the evidence does not show any resulting injury. Again, the evidence indicates that Brian Thomas did not access the document during the time it was in his possession and that, as soon as he discovered it was in his possession, he returned it. (Trial Tr. March 24, 2010, at 199-120).

Because Tryco has not shown an injury that resulted from Brian Thomas's actions, the Court finds no violation of the Computer Trespass Act.

## D. *Civil Conspiracy*

Tryco argues that it is entitled to relief under Va. Code Ann. § 18.2-500 for the conspiratorial actions of all of the defendants. The civil relief provided for in this section is predicated on the violation of Va. Code Ann. § 18.2-499, which states in part:

> Any two or more persons who combine, associate, agree, mutually undertake, or concert together for the purpose of (i) willfully and maliciously injuring another in his reputation, trade, business, or profession by any means whatever or (ii) willfully and maliciously compelling another to do or perform any act against his will, or preventing or hindering another from doing or performing any lawful act, shall be jointly and severally guilty of a Class I misdemeanor. Such punishment shall be in addition to any civil relief recoverable under § 18.2-500.

Tryco argues that Chris Thomas and Jayne Thomas entered into an agreement in November 2007 to damage Tryco's business. It argues that USMS became a party to the conspiracy under the theory of respondeat superior and that Brian Thomas joined the conspiracy in April 2008 when he accepted employment with USMS.

To recover under Va. Code Ann. § 18.2-500, Tryco must prove legal malice. To prove malice, Plaintiff must show that Defendants acted intentionally, purposefully, and without legal justification. *Virginia Vermiculite, Ltd. v. W. R. Grace & Co.*, 108 F. Supp. 2d 549, 605-06 (W.D. Va. 2000). "Without legal justification" means that the defendants contrived to accomplish some criminal or unlawful purpose, or to accomplish some purpose, not in itself criminal or unlawful, by criminal or unlawful means. *Id.* at 605.

Plaintiff argues that the defendants used unlawful means to compete with Tryco. Specifically, it argues that the defendants Chris and Jayne Thomas set up a new business modeled as a clone of Tryco for the sole purpose of competing with Tryco and recruited Brian Thomas to help them carry out their plan. Tryco argues that the defendants worked together to gather and use Tryco's confidential and trade secret information, that Brian Thomas unlawfully withheld contact information for Lackland and AFMLO from Tryco, and that he breached his fiduciary duty to Tryco.

The Court does not find, from the evidence presented, any malice on the part of the defendants. The defendants had a legal right to form USMS, to hire Brian Thomas, and to solicit bids from Lackland and AFMLO. There was no non-compete or non-solicitation clause in effect to prevent them from doing so. Likewise, the Court has determined that Brian Thomas's actions did not breach his fiduciary duty to Tryco, that there was no violation of the Virginia Trade Secret Act or the Computer Trespass Act. Therefore, the Court finds that the defendants did not employ any

unlawful means in this case, that they did not act maliciously, and thus that they did not violate Va. Code Ann. § 18.2-500.

E. *Tortious Interference with Business Relations*

Tryco argues that all of the Defendants tortiously interfered with the business relationships it had with Lackland and AFMLO. To prove tortious interference with a business expectancy, Tryco must show: (1) a business relationship or expectancy; (2) knowledge of the relationship or expectancy on the part of the interferer; (3) intentional interference inducing or causing breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted. *Duggin v. Adams*, 234 Va. 221, 226, 360 S.E.2d 832, 835 (1987). Because there was no contract between Tryco and Lackland or Tryco and AFMLO, Tryco must also show that the defendants used improper methods to interfere with these business expectancies. *Id.* at 226-27. Improper methods may include misuse of inside or confidential information or breach of a fiduciary relationship. *Id.*

Plaintiff cannot prove improper means in this case. Plaintiff claims that the improper means used by the defendants to interfere with Tryco's business expectancies were Brian Thomas's violation of the Computer Trespass Act, all of the defendants' violation of the Trade Secrets Act, Brian Thomas's breach of his fiduciary duty to Tryco, and the defendants' conspiratorial acts. The evidence does not, however, support these claims and the Court has found in the defendants favor on all of them. Therefore, as no other improper means has been asserted, the Court does not find that the defendants intentionally interfered with Tryco's business expectancies.

*III. Attorney's Fees under the Virginia Uniform Trade Secrets Act*

Under the VUTSA, a defendant is entitled to his attorney's fees if the court determines that a claim of misappropriation was made in bad faith. Va. Code Ann. § 59.1-338.1. In Virginia, such a claim is governed by an "objective reasonableness" standard. *Trident Perfusion Associates, Inc. v. Lesnoff*, 1997 U.S. App. LEXIS 22840, *7-*8 (4th Cir. Aug. 28, 1997). Under this standard, Brian Thomas would be entitled to attorney's fees if Tryco had no objective basis for believing it could prevail under the VUTSA.

Although plaintiff was unable to sustain its burden of proof, the Court does not find that the plaintiff's claims "had no chance of success

under the Act." *Id*. The claim survived extensive pretrial motions, and the Court needed several weeks to evaluate the trial evidence fully. Ultimately, a significant part of the Court's decision was based on what the Court determined to be the inadvertent behavior of the Brian Thomas. Therefore, the Court finds that the defendants have not shown bad faith on the part of Tryco, and it is thus not entitled to attorney's fees for its defense of the trade secrets claim.

### IV. Preemption under Va. Code Ann. § 59.1-341

In his closing argument, Brian Thomas asserts that Plaintiff's common law tort claims are preempted by its VUTSA claim. Va. Code Ann. 59.1-341 states in part:

> A. Except as provided in subsection B of this section, this chapter displaces conflicting tort, restitutionary, and other law of this Commonwealth providing civil remedies for misappropriation of a trade secret.

The Court does not reach this determination because it has already found that Plaintiff has not carried his burden with respect to those claims.

### V. Conclusion

For the foregoing reasons, this Court finds in favor of the Defendants on all Counts. The parties are to bear their own attorney's fees and costs.